Good morning and welcome to the Ninth Circuit. Judge Hawkins and I are happy to be here and we have Judge Wardlaw on video, which I think everybody can see quite well. We have several cases submitted on the briefs, but we have quite a few for argument. So for those who haven't been here before, we have a handy little clock up there. And for the appellant, that's your complete time, including your rebuttal time. And then magically, when it turns red, the clock keeps going, but actually you're supposed to stop. So it's similar to a stop sign. So just a fair warning on that. The first case for argument this morning will be Frazier v. Bisignano. And you can correct me because this is, of course, a newer name to us as to how to pronounce that, because I know we'll be seeing a lot of those cases. I think it's Bisignano, but it might be Bisignano. My colleague will know. I'm Jeffrey Baird from the Dellert Baird office and we are representing Mr. Lucian Frazier in this disability case. This case was decided under SSR 004P, which required, whenever there's an apparent conflict between VE testimony and the DOT, it requires a good explanation in some detail, as described by the Lemire decision. What we have is an RFC for occasional right overhead reaching. But the DOT describes all the occupations the VE identified as requiring either constant or frequent reaching. The DOT doesn't distinguish planes, but it would still be up to the VE and the ALJ to explain why there's a difference. The explanation that the ALJ solicited was in response to a compound question with a number of different elements and the VE simply said yes, it's because of my experience and my knowledge in studies and so forth. That wasn't in some detail, that didn't tell why the reaching was different. In other cases there's been, for example, the reaching might be local differences or industry differences or a different pattern in certain locations. But the VE here just gave a broad, overbroad statement of he's an expert, we know that, but it doesn't tell us why the reaching is occasionally overhead on the right. So under Lemire, we need a good explanation in some detail and we did not get it. So what do we know about, this is Judge Ward, what do we know about these drops from the record? The electronics worker, what basis do we have from the record to assume that an electronics worker would be reaching forward and not reaching upward? Well, we don't know that. Or small, this is the same question I'm going to ask the other side too, because a cashier, we know what a cash machine looks like and that you go down to get to the cash. That's a common experience for sure. But I've never personally encountered an electronics worker, a small products assembler, or a marker. Right, those would be jobs that the VE would have to explain in some detail. And the mere fact that my opponent, for example, looked at the DOT descriptions, which are elaborate, or as they were described in one of the cases as windy, the descriptions are windy, but the fact you had to look at it at all means it's not obvious. It means it's time for a VE to give a good explanation in some detail about a specific limitation. That's the way 004P works. And it was still applicable, it won't be in the future, but the new ruling takes effect January 2025, and this was all done by the agency way back in 23 and 24. Your client is a veteran. Right. Army and National Guard? That's right. Was he ever deployed? No. I note that although PTSD was referred to at the hearing level, it's not raised on appeal, is that correct? I haven't raised it. I don't think the mental aspects were... I had to limit the precise issues, and I didn't have good evidence on the PTSD. Let's put it this way, I couldn't overcome substantial evidence. So that was why I left that one out. I also left out the reaching limitations by the two examiners, but they weren't done in the ordinary functional assessment. They didn't say reach occasionally or reach... They were done poor, fair, whatever. So I would say I was fine with using the ALJ's own RFC. He said overhead reaching on the right is occasional, and that's the apparent conflict, and I'll go with that. The other issue was standing. Now, my client can stand, but how long? What about prolonged standing? The two examiners said four hours of standing total, with breaks as needed, basically. And the VE said... Was responding only to six hours of standing. The ALJ rejected the four hours standing not based on the findings these examiners themselves made, such as plantar fasciitis and numbness in the right foot at 70 degrees of straight leg raising, things like that. They said, okay, those findings are good for your limitations, but the record as a whole doesn't support you. The record as a whole is inconsistent. That's the ALJ's finding. But what the ALJ did is keep citing things like a normal gait in a routine exam, but that wouldn't explain prolonged standing. That wouldn't explain why it's troubling to go six hours, but it's possible to go four. Well, I just want to reconcile these, which is, I think, what you're trying to do. Yeah. We have, what, three doctors who say he could stand or walk for six hours? Is that right? Well, they didn't examine him, but that's true. I'm just saying that's the testimony that the ALJ has presented. The ALJ did have that. Right. And then...  The ALJ ultimately concluded two to four hours, correct? No, the ALJ ultimately concluded six hours. Six hours, which you have those three opinions. And the question we're left with then is whether that's sufficient in this record, substantial evidence, given that we have the three doctors with the six hours. Well, what's interesting is this is a really narrow period of issue. It's 18 months, I guess. It runs from, well, I have it written somewhere. It's only 18 months, and both of the examiners are right at the edges of that. So they define that period. The other doctors didn't. That was my impression. So it's because it's a narrow period of issue, the examiners give better evidence because they are in that period of issue or, yeah, really, they're within it. But they also define the boundaries of it. So I will save time for rebuttal unless you have questions, Your Honor. Thank you. Good morning, Your Honors. Joseph Lankhamer on behalf of the Commissioner. Judge Wardlaw, I would like to start with the question that you asked about SSR004P and the three occupations that the vocational expert identified and that the ALJ relied upon. I believe you asked, you know, what is it in these DOT positions that makes it obvious or apparent that a claimant would have to reach overhead? I think the case Gutierrez talks about common sense, common experience. I don't see it, especially when you start looking at, for example, the DOT electronics worker and among the things it says is loads and unloads parts from ovens, baskets, pallets, and racks. Racks seem to be overhead reaching. And then there's a couple, you know, cleans and deglosses parts using cleaning devices, solutions, abrasives, trims, flash from molded or cast. I mean, how do we, I mean, even, so common experience is one point. And then when you start looking at the DOT description, it doesn't eliminate overhead reaching. Right. And I think that's the point that I want to make is that Gutierrez certainly did say common sense was one thing that this court could rely on. But the more important point of Gutierrez is there actually has to be an obvious or apparent conflict between the testimony and the DOT description. And here I think what we're all sort of acknowledging is that there just is no specific indication in the DOT that a claimant would have to reach overhead. And that's what Gutierrez and SSR 004P really come down to is, is there an apparent conflict that the ALJ has to explore? Now, I think the more fundamental point on 004P is that the ALJ did actually ask about it at the hearing. If we turn to page, so regardless of whether or not this court decides that there's an apparent conflict or not, the ALJ went beyond and actually asked the VE. If we look at 72 of the record, the ALJ said, is there a conflict? The VE said no. And then what the ALJ did was say, well, what about instances where maybe the hypothetical contains more detail than the DOT? Like, quote unquote, the direction of reaching. That was one of the things that the ALJ asked the vocational expert. And then the vocational expert said that he based his testimony on 44 years of experience as a vocational counselor. We actually have his CV in the record at pages 397 to 98. And he then went on and said, I've conducted thousands of job sites analyses. I've visited sites. I've interviewed employees. Now, my colleague on the other side says this isn't enough. But 004P actually says that an ALJ can rely on a vocational expert's experience. Gutierrez mentions the exact same point. Terry has a really strong opinion from this court that says in a case where the claimant does not dispute the vocational expert's expertise and the vocational expert references that expertise at the hearing, that is a sufficient basis. And we know from cases like Ford and Bayless that we start from the baseline that vocational expert testimony is reliable. And he did say that. I mean, I'm looking right at page 72 right now. But he didn't explain what about this experience informed his opinion as to these three particular jobs. I think that the vocational expert's testimony about his experience is directly related to the testimony he provided about those three occupations. Because if we look on the prior page, this is where the ALJ is asking about the hypothetical that includes the overhead reaching. So the VE heard that testimony and then looked up and offered three different occupations that comported with those limitations. And then that's when the ALJ says, well, what about these limitations that the DOT might not cover? And that's when the vocational expert says, well, I've been to multiple job sites. I've conducted studies. And that is sufficient. We know that is sufficient under 004-P. We know it's sufficient under Terry, Gutierrez, cases that say when an ALJ asks about 004-P, asks the question about any potential conflicts, a vocational expert may rely on his experience to justify his testimony. And it's interesting because the claimant who was represented at the hearing never raised any questions about this. I know we've got arguments on the other side that say, well, it was a compound question. And we don't really know if the vocational expert was talking about experience with these jobs. And it's all confusing. But at the hearing, the attorney never asked a follow-up question about that. Even in post-hearing submissions where the claimant did raise some issues with some of the vocational expert's testimony, different issues, completely silent about this particular exchange. So it's not until federal court that we now have this after-the-fact argument that, well, everybody was confused about what happened. I think all of this underscores that there was no confusion at the hearing, that the ALJ asked the right question and the vocational expert provided sufficient testimony. I would like to turn, if I could, to some of my colleague's arguments about the standing and walking limitations. Judge McEwen, you asked about the state agency doctors who looked at these records and said, this claimant can stand or walk for six hours, which is what the ALJ found to be persuasive and what the ALJ ultimately adopted. That is substantial evidence. Because we know from cases like Tonopetian, which is a case under the prior regulations, but still what this court said in Tonopetian is that when we have non-examining doctors who have looked at records and when those doctors' opinions are consistent with independent evidence, that can constitute substantial evidence. A more recent case is Stifler. In Stifler, it's a very similar fact pattern where we had some doctors saying that the claimant had certain limitations, which conflicted with what the state agency doctors found. And the ALJ went with the state agency doctors in this court, approved of those factual findings. I think it's important to note what these doctors actually said about the physician assistant's opinions. Dr. Staley, who looked at Fraser's records, said that Miner's report was a gross overestimate of limitations. That's on car 150. Dr. Stewart said that Mr. Gonzalez's report was not supported by the totality of the evidence. That's on page 179. So I'm a little confused by my opponent's argument that these three doctors' opinions are somehow not related to the timeframe at issue. These doctors actually looked at the two opinions at issue in this appeal and were not persuaded by it. And then the ALJ has all of these opinions. We've got the three opinions on the one side from the doctors. We've got the two opinions on the other side from the physician assistants. And the ALJ is charged under the regulations with determining which opinion is more persuasive. And how does the ALJ do that? The ALJ looks at supportability. That's one factor. And the ALJ looks at consistency as the other factor. And we see the ALJ engaging in that analysis on car 28 through 30, where the ALJ is balancing these factors and reaching factual findings to resolve the conflicts. So at the end of the day, this really is just a dispute over the ALJ's resolution of conflicting facts. The ALJ gave good reasons for going with the three doctors' opinions about the standing and walking limitations versus the physician assistants' opinions on that issue. And I see I have about a minute left. If the court has any further questions, I'm happy to answer them. But if not, I can just request that this court affirm the ALJ's decision because substantial evidence supports it. Thank you. Thank you. Okay. 004P puts the burden of production of evidence on the VE and ALJ. That means if my prior attorneys didn't ask good questions, the burden is still on the ALJ to produce the evidence that resolves the apparent conflict. Under the new ruling, 24-3P, that's going to change the burdens on the plaintiff to do a good cross. Right now, in this case, it wasn't. The ALJ had to do that. The ALJ had the full burden of production at step five. So any argument to the contrary is just, there you go. Burdens on the ALJ didn't meet that burden. And again, my colleague points out the great expertise and knowledge of this VE. For goodness sakes, of course. He's very good. In fact, I even like it if I draw him when I'm doing a hearing. But he doesn't give a detailed answer. He doesn't give a specific answer. I know you've all been scholars and written exams or graded exams. A precise answer is better than a general one. A specific answer gives information you can work with. And it didn't have to be a lot here. He just had to explain why an electronics worker reaches forward but not up. But he didn't. He didn't say it's different locally, it's different based on the era of the industry. Nothing. Just in general, in answer to a series of limitations, he said, I am an expert. I have 40 years of experience, et cetera. One last point on that was... So you would have us send it back to the district court and from there back to the agency to resolve this? Well, I would urge the court to think textually, not purposefully. But if it does go back, any number of things could happen. I still could get my client paid. The 004P does require that, I think. It would require the remand for further proceedings. But we also have the findings of the examiners. And again, my opponent says the reviewers said no good. But if it was on remand, all of those issues would be revisited, I take it. And there might be more evidence. And he's older. And he's a decaying, honorable veteran but sort of in decline. So thank you very much. Thank you. Thank both counsel for argument in this case. The case is submitted.
judges: McKEOWN, HAWKINS, WARDLAW